OPINION OF THE COURT
Howard A. Zeller, J.
Defendant Jones Chemicals, Inc. (Jones) moves pursuant to CPLR 3103, 3122 and 3133 for a protective order regarding certain information and materials sought by plaintiff State of New York in a set of interrogatories and a notice to produce.
This action concerns the alleged pollution of a municipal water supply by the improper storage and handling of hazardous chemicals. Defendants are involved in various capacities in the transport and storage of hazardous waste at a site on Prentice Road in the Town of Vestal. The factual background and particular allegations are described at length in an earlier decision of this court (111 Misc 2d 343).
The State served upon Jones a set of interrogatories and a notice to produce which Jones seeks to have set aside. The parties have resolved some of their differences concerning disclosure. Jones’ counsel has submitted a letter dated February 22, 1983 which lists the requests still in dispute and State’s counsel confirms this as an accurate list in a letter dated February 24, 1983. The State has further limited its request for information regarding solvents, the class of chemicals which allegedly has contaminated Vestal-well No. 4-2. This decision will address the items still controverted.
CPLR 3101 (subd [a]) provides in part “There shall be full disclosure of all evidence material and necessary in the prosecution * * * of an action”. The Court of Appeals has stated the “words, ‘material and necessary’, are, in our view, to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason.” (Allen v Crowell-Collier Pub. Co., 21 NY2d 403, 406.)
*1042 Paragraph 24(a) of the interrogatories reads as follows: “State whether Jones was ever (a) notified or advised by any governmental agency or other person of the existence or threat of chemical contamination of the environment resulting from Jones’ manufacture, storage, transportation, use, disposal, or other handling of chemicals, or was required to or agreed to or otherwise undertook to eliminate, clean up or contain any such chemical contamination, at the Monarch-Vestal site or at any site owned, leased, or otherwise used by Jones, any Jones subsidiary or affiliate, Monarch or Caledonia.”
Paragraph 26 of the interrogatories reads as follows: “State whether Jones has ever performed or arranged for the performance of a risk assessment or other evaluation of the risk(s) of harm to the environment from the manufacture, storage, transportation, disposal, or other chemical activities conducted by Jones, by Monarch or by Caledonia. If so, describe each such risk assessment or other evaluation, including its date, the person(s) by whom it was performed, the nature of the assessment, the conclusions reached, and the identity of any and all documents generated in connection therewith.”
Jones argues that paragraphs 24(a) and 26 are unduly broad and burdensome, and that activities at sites other than Vestal are not relevant to this action; disclosure of such records will lead to the trial of unnecessary issues. An assistant to the chairman of Jones’ board of directors avers that Jones works at 27 sites in 18 States. The State contends the information requested in these paragraphs is an essential element of several causes of action. The State alleges in part that Jones knew or should have known of the unreasonable risk of handling chemicals at the Vestal site, and negligently allowed chemicals to enter the groundwater.
Paragraph 24(a) in part seeks governmental notices regarding Jones’ activities. Jones argues a “governmental warning in Indiana, for example, does not mean that there is a hazard — it means that a bureaucrat thinks there is.” This is true. However, the fact that Jones received notice of a hazard in one location will affect the foreseeability of similar hazards in similar locations. In Wilson v State of *1043 New York (36 AD2d 559), a prisoner at Sing Sing alleged a fellow inmate had attacked him and the State had negligently supervised the assailant. The victim sought disclosure of the attacker’s “behavior records * * * at Sing Sing or other places of confinement, his arrest and conviction records and records pertaining to his ‘social, psychological and psychiatric background’ ” (p 559; emphasis added). The court stated (p 559) that “[e]vidence of the attacker’s prior behavior and a diagnosis of his mental condition would be material and necessary to the prosecution of this claim * * * since the State’s duty is measured by the risks reasonably to be foreseen”. The court disallowed disclosure of confidential communications between the assailant and physicians or psychiatrists, but ordered disclosure of the other records.
The foreseeability of an assault in Wilson (supra, p 559), did not turn exclusively upon the assailant’s conduct at Sing Sing, but also depended on his conduct at “other places of confinement”. Here, the foreseeability of pollution at Vestal will not turn exclusively on what happened at that site; it will also turn on Jones’ conduct elsewhere, and what it knew or should have known from its experience generally. Foreseeability is a broad part of a broad concept — negligence — and it cannot be resolved by looking only at one site, one small part of the operations and knowledge of a national corporation. Such compartmentalization would give only a partial and distorted answer to an expansive question.
Very few governmental warnings may ultimately be relevant at trial, but that should not inhibit their production at this stage, which is subject to a more liberal standard (see Watson v State of New York, 53 AD2d 798). It is enough if the warnings, only lead to other admissible evidence (see Siegel, NY Prac, § 344, p 421) or that they be “sought in good faith for possible use as evidence-in-chief or in rebuttal or for cross-examination” (3A Weinstein-Korn-Miller, NY Civ Prac, par 3101.07, pp 31-29 — 31-30).
Jones argues that warnings and events at other sites are not material to this action. Events at other sites might not be material if the State had simply alleged a narrow violation of a technical New York rule or statute. However, *1044 the issue here is much broader: did Jones act reasonably, and could it have predicted or prevented the alleged pollution at Vestal? The breadth of this issue necessarily affects the breadth of disclosure needed to resolve it.
Jones also argues it may have to conduct searches at several sites to find the information in paragraph 24(a), and this would be burdensome. Apart from the number of sites, Jones has submitted little evidence of the nature of this burden. Moreover, Jones has no objection to producing information “restricted to Jones’ Chemicals’ dealings with Monarch, and to those chemicals which were alleged to have contaminated Vestal Well 4-2”. The State only seeks information about solvents, the class of chemicals allegedly found in the well. In light of Jones’ apparent concession, the State’s limitation, and the crucial role that evidence regarding these chemicals could play in this case, paragraph 24(a) is not unduly burdensome. It should be answered insofar as it relates to solvents.
Paragraph 26 asks for information regarding any risk assessments prepared by or for Jones. Jones has advised the court a risk assessment is underway at present regarding an insurance application, and a copy of the assessment will be voluntarily produced when it is ready. Like the governmental warnings, any risk assessments will have a direct bearing on what Jones knew or should have known about the properties of the substances stored at Vestal. This should be answered in its entirety, subject to the limitation regarding solvents. The risk assessment currently being prepared should be provided when it is ready.
Paragraph 25 of the notice to produce seeks: “All documents referring or in any way relating to methods or equipment used by Monarch or Caledonia for the handling or storage of chemicals, including safety, spill-prevention and other procedures followed or to be followed by Monarch or Caledonia employees in handling or storing chemicals, and any changes in such procedures, including but not limited to: operational manuals; safety training memoranda or checklists; memoranda or other documents regarding a ‘contingency program’; instructions to employees; reports; memoranda; correspondence; notes; minutes of meetings; bulletins, reports, warnings, or instructions of *1045 any governmental agency, manufacturer or other person; and reports, correspondence, notes of meetings, or other documents reflecting expert advice to or consultation with Jones, Monarch or Caledonia regarding chemical handling or storage methods or safety or spill-prevention procedures or equipment.”
Jones objects to answering paragraph 25 on the ground that any records from sites other than Vestal are not material to this action. This argument lacks merit. If Jones prepares a company-wide rule at its main office regarding the storage of solvents, and sends it to all sites, including Vestal, that rule will be just as relevant to this lawsuit as if it were prepared at Vestal only for use at that site. The key distinction on this request is not where these documents originate but whether they apply to the Vestal site. Jones is directed to answer paragraph 25 insofar as it relates to solvents and to rules, procedures, and other information which would apply to the Vestal operations.
Paragraph 28 of the notice to produce seeks: “All documents referring or in any way relating to geohydrological or chemical tests and reports regarding potential or actual chemical contamination of the soil or groundwater at any site owned, leased or used by Monarch or Caledonia other than the Monarch-Vestal site, including but not limited to reports, memoranda, correspondence, notes, and minutes of meetings.”
Jones objects to paragraph 28 on the ground that off-site tests or reports are not material to this action. Chemical or geohydrological tests from other sites could show Jones’ knowledge of the effects of solvent spills and pollution, and Jones’ knowledge of what tests could have been performed at Vestal. As with the governmental warnings, the question is not whether these tests are ultimately admissible, but whether they are relevant at this stage. Jones should answer this paragraph as it relates to tests with solvents.
Paragraph 29 of the notice to produce seeks: “All documents referring or in any way relating to any notices or warnings sent by any governmental agency to Jones, Monarch or Caledonia with regard to existing or potential problems with chemical storage, disposal or handling at *1046 any site owned, leased or used by Monarch or Caledonia other than the Monarch-Vestal site, including notices, warnings, correspondence, memoranda, notes, and minutes of meetings.”
Jones objects to this paragraph for the same reason as paragraph 28 — that off-site information is not material here. This objection lacks merit here as well, and Jones should answer paragraph 29 as it relates to solvents.
Jones’ objection to paragraph 68 of the notice to produce has been withdrawn “on condition that the request be limited to material in the files of officers, directors, and employees with responsibility for environmental matters or for safety procedures for chemical handling.”
Jones’ objection to paragraph 69 of the notice to produce has been withdrawn subject to the same condition as paragraph 68.
Paragraph 71 of the notice to produce seeks: “All documents referring or in any way relating to geohydrological or chemical tests and reports regarding potential or actual chemical contamination of the soil or groundwater at any site owned, leased or used by Jones, including but not limited to reports, memoranda, correspondence, notes, and minutes of meetings.”
This request is the same as paragraph 28, except that it applies to Jones. This request should be answered as it relates to tests and reports on solvents.
Paragraph 72 of the notice to produce seeks: “All documents referring or in any way relating to notices or warnings sent by any governmental agency to Jones with regard to problems with chemicals or chemical storage or handling at any site owned, leased or used by Jones, including notices, warnings, correspondence, memoranda, notes and minutes of meetings.”
This paragraph is essentially a counterpart to paragraph 24(a) of the interrogatories. This should be answered as it relates to solvents.
Paragraph 86 of the notice to produce seeks: “To the extent not requested by any of the specific document requests listed above, all correspondence and memoranda between Jones and Monarch or between Jones and Caledo *1047 nia, and all memoranda or notes of conversations or meetings between or among any representatives of Jones, Monarch or Caledonia.”
Jones objects that these records might relate to privileged communications between attorney and client. Jones has agreed to “provide the State with notice of the precise documents which we claim are privileged”. This request should otherwise be answered insofar as it seeks correspondence and memoranda between Jones and Monarch and between Jones and Caledonia, that relate to the operation of the Vestal site.
Jones has agreed that its motion regarding paragraph 90 of the notice to produce be denied “at this time subject to our providing specific notice to the State as to any documents we claim to be privileged. None are known at this time”.
Jones has similarly agreed regarding paragraph 91 of the notice to produce.
The motion of Jones is resolved as follows:
Jones is directed to answer interrogatory paragraphs 24(a) and 26.
Jones is directed to answer notice to produce paragraph 25 regarding rules, procedures and other information that would apply to the Vestal operations.
Jones is directed to answer notice to produce paragraphs 28, 29, 71 and 72.
Jones is directed to answer notice to produce paragraph 86 insofar as it relates to the operation of the Vestal site.
All of the preceding directions are limited to information regarding solvents.
(The agreement of the parties regarding paragraphs 68, 69, 90 and 91 of the notice to produce is noted.)